UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

GREENPAC MILL, LLC
4400 ROYAL AVENUE
NIAGARA FALLS, NEW YORK 14304,

                      PLAINTIFF,
        v.

OCCIDENTAL CHEMICAL CORPORATION
OCCIDENTAL TOWER
5005 LBJ FREEWAY
DALLAS, TEXAS 75244;

KIMBERLY-CLARK CORPORATION
351 PHELPS DRIVE
IRVING, TEXAS 75038; AND

NIAGARA MOHAWK POWER COMPANY
D/B/A NATIONAL GRID AND/OR NATIONAL GRID USA
SERVICE COMPANY, INC.
300 ERIE BOULEVARD WEST
SYRACUSE, NY 13202

                      DEFENDANTS.

**AMENDED COMPLAINT**

Civil No 13-00754

HON. WILLIAM M. SKRETNY

---

Plaintiff Greenpac Mill, LLC ("Greenpac" or "Plaintiff"), by its attorneys, THE SLATER LAW FIRM, PLLC, for its amended complaint against defendants alleges the following, upon information and belief:

### Nature of the Action

1.    This action seeks recovery under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §9607, for costs that Greenpac has incurred in responding to environmental contamination (in the form of radioactive hazardous waste) on property currently owned by Greenpac located at 4400 Royal Avenue, Niagara Falls, New York ("4400 Royal" or "the Site").  Plaintiff also demands, in the alternative,

Defendants be liable for one hundred percent (100%) contribution of these costs to Greenpac pursuant to CERCLA, 42 U.S.C. §9613(f)(1).  Finally, Greenpac also seeks relief under common law causes of action in negligence, indemnification, contribution and declaratory relief.  Plaintiff seeks damage for all costs incurred in responding to the contamination located at and on the Site and consequential damages, attorneys' fees and costs of suit, and for such further and other relief as may be appropriate.

## Jurisdiction

2. This Court has subject matter jurisdiction over Plaintiff's CERCLA claims pursuant to 42 U.S.C. §9607.

3. Venue of this action is proper in the United States District Court for the Western District of New York by virtue of 42 U.S.C., §9613(b) and 28 U.S.C. §§1391(a) and (b) because this dispute involves response actions undertaken to remediate releases or threatened releases of hazardous substances at real property located in Niagara County, New York.

4. This Court has jurisdiction of the state claims pursuant to the doctrine of pendent jurisdiction.

## The Parties

5. GREENPAC is a limited liability corporation organized and existing under the laws of the State of New York and has an office for the transaction of business located at 4400 Royal Avenue, Niagara Falls, New York 14303.

6. Upon information and belief, the defendant OCCIDENTAL CHEMICAL CORPORATION ("OCC"), is a corporation organized and existing under the laws of the State of New York and has an office for the transaction of business located at Occidental Tower, 5005 LBJ Freeway, Dallas, Texas 75224.

7. Upon information and belief, the defendant KIMBERLY-CLARK CORPORATION ("KCC"), is a corporation organized and existing under the laws of the State of Delaware and has an office for the transaction of business located at 351 Phelps Drive, Irving, Texas 75038.

8. Upon information and belief, NIAGARA MOHAWK POWER CORPORATION d/b/a NATIONAL GRID AND/OR NATIONAL GRID USA SERVICE COMPANY, INC., ("NIMO"), is a company organized and existing under the laws of the State of New York with offices for the transaction of business in the United States located at 300 Erie Boulevard West, Syracuse, NY 13202.

**Statement of Facts**

9. Greenpac is the current owner of 4400 Royal.

10. In May 2010, Greenpac filed an application to enter the New York State Department of Environmental Conservation's ("DEC") Brownfield Cleanup Program (NYS Environmental Conservation Law Article 27 Title 14 and 6 NYCRR Part 375) ("BCP") for remediation of the Site.

11. Greenpac was deemed eligible to enter the BCP in June 2010.

12. A Brownfield Cleanup Agreement was executed between Greenpac and DEC and thereafter Greenpac commenced the environmental investigation and remediation of the Site under the BCP.

13. Between December 2010 and February 2011, the structures on the Site (Mill No. 2, Building No. 10, and the wastewater Pre-Treatment Plant) were demolished in accordance with a DEC-approved Interim Remedial Measure ("IRM") Work Plan.

14. Between July 2011 and December 2011, in accordance with a DEC-approved Soil Excavation IRM Work Plan, Greenpac implemented and completed the IRM by excavating and

removing all soils on Site in excess of Industrial Use Soil Cleanup Objectives set out in 6 NYCRR Part 375.

15. In March 2012, the DEC approved the Site remediation as complete and issued a Certificate of Completion for the Site, on June 29, 2012, indicating no further action was required.

16. Over 200,000 tons of soil were disposed of at permitted off-site landfills as part of this response/action.

17. In August 2011, during implementation of Phase 1 and 2 of the Soil Excavation IRM, radiation detectors were triggered on three (3) trucks transporting excavated soil from the Site to a solid waste landfill (Allied Landfill) indicating that excess levels of radioactivity were contained in the soils being transported.

18. No prior reports or information indicated the possible presence of radioactive or radiologically impacted soils or materials at the Site nor was Greenpac or the DEC aware of any such information.

19. As a result of this discovery, an Addendum to the Remedial Investigation Work Plan was prepared (and approved by DEC) to delineate the extent of soils on Site containing radioactive contamination in excess of DEC and NYS Department of Health ("DOH") cleanup criteria (10,000 cpm). Following the completion of this investigation, an Addendum to the Soil Excavation IRM Work Plan was prepared and approved by DEC setting out the approved method for the screening, excavation, and off-site removal of all radioactive-impacted soils identified in the investigation that contained radioactivity in excess of the DOH health criteria/guidance.

20. Over 20,000 tons of radiologically impacted soils were ultimately removed and disposed of at a permitted landfill in Michigan at a cost to Greenpac in excess of $6 million.

21. KCC previously owned, operated, and conducted industrial and manufacturing operations at 4400 Royal.

22. Upon information and belief, KCC previously owned, operated, and conducted such industrial and manufacturing operations at 4400 Royal between March 1920 and May 1974.

23. NiMo and/or its corporate predecessors previously owned the property at 4400 Royal between January 1891 and March 1920.

24. In August 1920, KCC was granted building permits for the construction of plant buildings at the Site, under which radioactive hazardous substances and waste were found to be located and which had to be remediated by Plaintiff as described above.

25. During its period of ownership and operation of the Site, NiMo disposed of, discharged, released, and otherwise arranged for the disposal of radioactive hazardous substances and wastes in various locations at 4400 Royal and/or arranged with OCC or others to do so.

26. During its period of ownership and operation of the Site, KCC disposed of, discharged, released, and otherwise arranged for the disposal of radioactive hazardous substances and wastes in various locations at 4400 Royal and/or arranged with OCC or others to do so.

27. During the period of time KCC owned and operated the Site, OCC disposed of, discharged, released, and otherwise arranged for the disposal of radioactive hazardous substances and wastes in various locations at 4400 Royal and/or arranged with KCC to do so.

28. As a result of the foregoing investigation and remedial efforts, and its ongoing efforts, Greenpac has incurred expenses and costs consistent with the National Contingency Plan

("NCP"), 40 C.F.R. Part 30 *et seq.*, to fully remediate 4400 Royal for which defendants bears full responsibility.

29. As a result of defendants' actions and/or omissions, Greenpac has also suffered, is suffering, and will suffer substantial damages and injury with regard to loss of value of its property and other compensatory property damages.

30. Greenpac has paid significant costs in assessing the release or threatened release of a hazardous substance within the meaning of CERCLA, 42 U.S.C. §9607(a).

31. Greenpac is not responsible for nor did it cause or contribute to the presence and/or release of hazardous substances at 4400 Royal.

32. Some and/or all of the releases at some or all of the properties were sudden and/or accidental in nature.

**FIRST CAUSE OF ACTION**
**CERCLA §9607(a)(2)**

33. Greenpac repeats and realleges the allegations set forth in paragraphs 1 through 32 as if set forth fully herein.

34. This is an action to recover response costs under 42 U.S.C. §9607.

35. Pursuant to CERCLA §107(a), 42 U.S.C. §9607 (a), any person who has incurred necessary costs of response consistent with the NCP is entitled to recover those costs from any other person who is liable or potentially liable under CERCLA §107(a), 42 U.S.C. §9607(a).

36. Pursuant to §107(a), 42 U.S.C. §9607 (a)(2), any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed is strictly liable for all costs of removal or remedial actions that are incurred by any other person at the facility.

37. Pursuant to §107(a), 42 U.S.C. §9607 (a)(3), any person who arranges to dispose of hazardous substances at a facility containing such hazardous substances is strictly liable for all costs of removal or remedial actions that are incurred by any other person at the facility.

38. OCC, KCC, and NiMo are a "persons" as defined by CERCLA, 42 U.S.C. §9601(21).

39. 4400 Royal is a "facility" as that term is defined by CERCLA, 42 U.S.C. §9601(9).

40. There have been "releases" and/or "threatened releases" of "hazardous substances" at or from the Site with the meaning of CERCLA §101(22), 42 U.S.C. §9601(22).

41. The actions undertaken by Plaintiff with respect to the remediation of the Site constitute "response actions" as that term is defined in CERCLA §101(25), 42 U.S.C. §9601(25).

42. The costs of response actions undertaken by Plaintiff with respect to the remediation of the Site constitute "costs of response" as that term is defined in CERCLA §101(a), 42 U.S.C. §9601(a).

43. All of the costs of response incurred by Plaintiff with respect to the remediation of the Site were necessary and consistent with the NCP.

44. KC and/or NiMo are persons that owned and operated the Site at the time of the disposal of hazardous substances thereon or that otherwise arranged for the disposal of hazardous substances at the Site from which there has been a release or a threatened release that has caused the incurrence of response costs by Greenpac.

45. OCC is a person that arranged for the disposal of hazardous substances at the Site from which there has been a release or threatened release and that has caused the incurrence of response costs by Greenpac.

46. Pursuant to CERCLA, 42 U.S.C. §9607(a)(2) and (3), defendants are strictly liable for the costs and damages alleged.

## SECOND CAUSE OF ACTION
## CERCLA Contribution §9613(f)

47. Greenpac repeats and realleges the allegations set forth in paragraphs 1 through 46 as though set forth fully herein.

48. As a direct and proximate result of defendants' disposal and/or treatment of hazardous substances at the facilities, Greenpac has incurred and may incur response costs in the future within the meaning of CERCLA, 42 U.S.C. §9607(a).

49. Greenpac has incurred further costs for the removal and remediation of hazardous substances disposed of and/or treated at the facilities in order to complete the response.

50. All of the costs that Greenpac has incurred or will incur, including attorneys' fees expended in this action, are and will be a necessary cost of response consistent with the NCP within the meaning of CERCLA, 42 U.S.C. §9607(a).

51. Pursuant to CERCLA, 42 U.S.C. §9613(f), Defendants are obligated to pay to Greenpac its contributive share of the foregoing cost and damages.

## THIRD CAUSE OF ACTION
### Negligence

52. Greenpac repeats and realleges the allegations set forth in paragraphs 1 through 51 as if fully set forth herein.

53. Defendants owed to Greenpac a duty to exercise reasonable care to prevent the spill, release, escape, discharge, and/or disposal of hazardous substances and/or migration of hazardous substances onto and into the soils and environs in groundwater at the Site and breached its duties by failing to exercise reasonable care to prevent and/or properly contain the spill, release, escape, discharge, disposal and/or migration of such hazardous substances and other contaminants.

54. Defendants negligently, carelessly and recklessly discharged hazardous substances, and other contaminants into the environment.

55. Defendants' negligent acts and omissions have resulted in the contamination of the Site and proximately caused Greenpac to incur expenditures arising from the remedial activities associated with remediation of the Site.

56. Defendants are liable to Greenpac in negligence for all direct and indirect damages including, but not limited to, loss of use of enjoyment, reduced property values, stigma damages, property damages, carrying costs, and other costs and fees, including attorneys' fees, and past and future injury, harm and property damage suffered by Greenpac, some of which is irreparable.

## FOURTH CAUSE OF ACTION
### Indemnification

57. Greenpac repeats and realleges the allegations set forth in paragraphs 1 through 56 as though set forth fully herein.

58. Greenpac through no fault of its own, has and will be lawfully compelled to pay damages and/or to incur substantial expenses in the form of damages related to the remediation of the Site.

59. The remediation is necessary to clean up the contamination caused by defendants' ownership and operation of the facilities.

60. Defendants are therefore required to indemnify Greenpac for all past and future expenses, fees, damages and response costs suffered as a result of its actions.

## FIFTH CAUSE OF ACTION
### Common Law Contribution

61. Greenpac repeats and realleges the allegations set forth in paragraphs 1 through 60 as though set forth fully herein.

62. Greenpac has incurred and will continue to incur substantial expenses and damages to remediate the contamination at the Site caused by defendants' ownership and operation of the facilities.

63. Greenpac is entitled to contribution from defendants for all past and future expenses, fees, damages and responses and other costs incurred by Greenpac for the remediation of the Site.

## SIXTH CAUSE OF ACTION
### Declaratory Relief

64. Greenpac repeats and realleges the allegations set forth in paragraphs 1 through 63 as though set forth fully herein.

65. An actionable, substantial, legal controversy now exists between Greenpac and defendants and Greenpac seeks a judicial declaration of its rights and legal relations with defendants pursuant to 28 U.S.C. §2201. Greenpac contends that defendants are strictly liable under CERCLA and are obligated to reimburse Greenpac for its contributory share of its past, current and future costs of responsive damages under CERCLA, 42 U.S.C. §§9607(a) and 9613(f).

66. A declaratory judgment is appropriate for numerous reasons, including, but not limited to, the following:

a. A declaratory judgment will alleviate the need for multiple lawsuits as Greenpac has incurred costs in making a response in the past, and will incur costs in making a response in the future, thereby providing a complete solution to the differences between the parties.

b. A declaratory judgment will provide assurances that Greenpac will be reimbursed for past, present and future costs so that they will be able to make the proper response.

c. The public interest will be served and the declaratory judgment will define the rights and responsibilities of the parties in this suit and, in so doing, will render Greenpac more able to make the proper environmental response and further CERCLA's statutory goal to "protect the public health, welfare and environment."

WHEREFORE, Greenpac requests this Court award judgment in favor of Plaintiff and against defendant as follows:

a. Awarding judgment to Plaintiff against defendants in amount of the total past, present and any future cleanup and remedial costs and all direct and indirect damages, incurred by Plaintiff in responding to the contamination referenced herein;

b. Awarding Plaintiff, against the defendants, the sum of fifty million dollars ($50 million) in compensatory and consequential damages;

c. Awarding judgment for Plaintiff requiring reimbursement for the attorney fees, interest, costs and disbursements incurred in bringing this action;

d. Awarding judgment for Plaintiff for prejudgment interest and penalties; and

e. For such other and further relief as the Court deems just and proper.

Dated:  Buffalo, New York  
       August 13, 2013

THE SLATER LAW FIRM, PLLC

/s/ **Craig A. Slater, Esq.**  
*Craig A. Slater, Esq., of Counsel*  
Attorney for Plaintiff  
26 Mississippi Street – Suite 400  
Buffalo, New York 14203  
Telephone: (716) 845-6760